USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ____________
DATE FILED: SEP 2 7 2013

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SIKHS FOR JUSTICE, et al.,

Plaintiffs,

-v-

MANMOHAN SINGH,

Defendant.

13 Civ. 6858 (AJN)

MEMORANDUM & ORDER

ALISON J. NATHAN, District Judge:

Before the Court is Plaintiffs' September 27, 2013 emergency *ex parte* Motion for Leave to Effect Alternative Means of Service. Plaintiffs represent a number of Indian Sikhs who were allegedly subjected to torture and cruel and inhuman treatment in India at the hands of Defendant Manmohan Singh, the Prime Minister of India. Compl. ¶¶ 1–2. In their motion, Plaintiffs ask the Court to order members of Defendant's security detail or hotel staff to serve Defendant with the Complaint and Summons in this action while he is visiting New York City. Bains Aff. ¶ 1. The motion was filed today at 2:41 PM; Plaintiffs seek emergency relief because, they claim, Defendant is scheduled to leave the United States on September 30. Bains Aff. ¶ 3(e). For the following reasons, Plaintiffs' request is denied.

The Court concludes that Defendant's status as a foreign head of state prevents the Court from ordering service of process on him. Although Plaintiffs have not raised the issue and the *ex parte* nature of their motion means that the Court has not heard Defendant's views, "courts may not so exercise their jurisdiction, . . . as to embarrass the executive arm of the government in conducting foreign relations," *Ex parte Republic of Peru*, 318 U.S. 578, 588 (1943), and *sua*

*sponte* consideration of immunity is appropriate in this context. *Cf. Peterson v. Islamic Republic of Iran*, 627 F.3d 1117, 1123–29 (9th Cir. 2010).

Frequently, in an adversary proceeding involving a foreign head of state, the Executive Branch will enter a "suggestion of immunity" that is absolutely binding on the courts. *See, e.g.*, *Habyarimana v. Kagame*, 696 F.3d 1029, 1032 (10th Cir. 2012); *Ye v. Zemin*, 383 F.3d 620, 625–26 (7th Cir. 2004); *cf. Samantar v. Yousuf*, 130 S. Ct. 2278, 2284 (2010) (suggestions of immunity are binding in suits against a foreign sovereign); *Spacil v. Crowe*, 489 F.2d 614, 616–21 (5th Cir. 1974) (same). In the absence of such a suggestion, however, a court has the obligation to decide for itself whether immunity exists. *See In re Doe*, 860 F.2d 40, 45 (2d Cir. 1988). Given the emergency nature of Plaintiffs' motion, it would be futile to expect guidance from the Executive Branch, and the Court is required to conduct its own inquiry. In determining whether immunity applies in the absence of instruction from the Executive Branch, courts consider "the principles accepted by the department of the government charged with the conduct of our foreign relations." *Republic of Mexico v. Hoffman*, 324 U.S. 30, 35 (1945); *Garb v. Republic of Poland*, 207 F. Supp. 2d 16, 23 (E.D.N.Y. 2002), *vacated on other grounds*, 72 F. App'x 850 (2d Cir. 2003). This inquiry is guided by looking to how the Executive Branch has treated similar cases. *See, e.g.*, *Hoffman*, 324 U.S. at 35–36.

Strictly speaking, the question of whether a head of state may be served with process is a question of inviolability, rather than immunity. *See Tachiona v. United States*, 386 F.3d 205, 221 (2d Cir. 2004); *Ye*, 383 F.3d at 623. However, similar foreign policy concerns apply, and the Court will look to "principles accepted" by the Executive Branch to guide its analysis of Plaintiffs' motion.

In *Ye v. Zemin*, 383 F.3d 620, the Seventh Circuit vacated a court order providing for service of process on Jiang Zemin, the President of China. The district court had granted a motion similar to Plaintiffs' here, and issued an order "permitting service by delivery of a copy of the summons and complaint 'to any of the security agents or hotel staff helping to guard' President Jiang." *Id.* at 623. Intervening on Jiang's behalf, the Executive Branch argued that the order should be vacated because "Jiang was personally inviolable and, therefore, incapable of being served." *Id.* The Seventh Circuit deferred to that judgment. As the court noted, "Recognizing the immunity of a head of state and precluding service of process on a head of state are motivated by the same concern for the effective conduct of this nation's foreign affairs." *Id.* at 628. A head of state may view being served as "an affront to the dignity of both the leader and the state," and for a branch of the U.S. government to authorize such service could therefore frustrate the "President's ability to reach this Nation's diplomatic objectives." *Id.* (internal quotation marks omitted); *see also Weixum v. Xilai*, 568 F. Supp. 2d 35, 38 (D.D.C. 2008) (deferring to Executive Branch's determination that a Chinese diplomat was immune from service of process during a special diplomatic mission to the U.S.).

There are two obvious distinctions between *Ye* and this case, neither of which affects its applicability. First, as noted above, the Executive Branch has not actually entered a suggestion of immunity or inviolability on Defendant's behalf. However, this case does not resemble those in which courts have drawn adverse inferences with respect to immunity after asking for a suggestion from the Executive Branch and receiving none. *See, e.g.*, *Heaney v. Gov't of Spain*, 445 F.2d 501, 503 & n.2 (2d Cir. 1971) ("the State Department's failure or refusal to suggest immunity is a significant factor to be taken into consideration"). Instead, the Court has every reason to believe that, but for the emergency circumstances of this motion, the Executive Branch

would view the considerations militating against serving Defendant to be every bit as weighty as they were in *Ye*.

Second, the service of process in *Ye* was actually directed to reach a third party through service on Jiang himself. *See* 383 F.3d at 627. But that arguably reduced the offensiveness of the order in *Ye*, *see id.* at 629 (discussing district court's conclusion that "service on a head of state where that service is directed towards a third party does not implicate the justifications for inviolability and immunity to the same degree as service on a head of state when that service is directed towards the head of state himself"), so the case for precluding service is even stronger in this case.

The cases that Plaintiffs cite are not to the contrary. In *Kadic v. Karadzic*, 70 F.3d 232 (2d Cir. 1995), the Second Circuit upheld a district court's order directing service on the self-proclaimed leader of an unrecognized nation. The court concluded that common law principles of immunity did not extend to the defendant because he was not the recognized head of state of a friendly nation. *Id.* at 248. The same is not true here: as Plaintiffs must concede, Singh is the Prime Minister of India. Compl. ¶¶ 1–2. And *Zhou v. Peng*, No. 00 Civ. 6446 (WHP), 2002 WL 1835608 (S.D.N.Y. Aug. 8, 2002), also relied upon by Plaintiffs, was later vacated upon the district court's conclusion that ordering service upon a Chinese Premier by members of his security detail—which included members of the U.S. government—violated the separation of powers. *See Zhou v. Peng*, 286 F. Supp. 2d 255, 267 (S.D.N.Y. 2003). The court did not consider the argument raised *sua sponte* here, namely, whether inviolability protected the head of state himself from service. In light of *Ye*, an appellate decision that postdates *Zhou*, the Court concludes that *Zhou* is of little value in this case.

Finally, the Court's conclusion is buttressed by two additional considerations. First, Plaintiffs' claims against Defendant would likely be precluded by head-of-state immunity in the event that he was successfully served. *See Lafontant v. Aristide*, 844 F. Supp. 2d 128, 131–32, 138 (E.D.N.Y. 1994) ("A head-of-state recognized by the United States government is absolutely immune from personal jurisdiction in United States courts unless that immunity has been waived by statute or by the foreign government recognized by the United States," and "the [Torture Victim Protection Act] does not negate head-of-state immunity"); *Manoharan v. Rajapaska*, 845 F. Supp. 2d 260, 264–65 (D.D.C. 2012) (same). Second, the allegations in the Complaint concern actions by foreign citizens, taken against foreign citizens, that occurred overseas. In light of *Kiobel v. Royal Dutch Petroleum Co.*, 133 S. Ct. 1659 (2013), the Court would likely lack subject matter jurisdiction over the merits of this action. *Cf. Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700 (2d Cir. 2000) ("[F]ailure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court *sua sponte*.").

For the foregoing reasons, Plaintiffs' motion is DENIED. A copy of this order is being e-mailed to Plaintiffs' counsel, and the order will be docketed on ECF as soon as possible (likely on September 30, 2013).

Dated: September 27, 2013, 8:51 PM
New York, New York

ALISON J. NATHAN
United States District Judge